UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDY J. AMES,

    Plaintiff,

v.                                                     Case No. 8:07-cv-00698-T-24-TGW

VERIZON DATA SERVICES, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 14.) Plaintiff filed a Response in which she opposes this motion, in part. (Doc. No. 34.) Defendant filed a Reply to Plaintiff's Response. (Doc. No. 38.)

**I. INTRODUCTION**

Plaintiff, Judy J. Ames, is a woman of Palestinian descent. (Compl., pp. 14–15.) She claims that her supervisors at Verizon Data Services (Verizon) have discriminated against her based on her gender and national origin. In her eight-count Complaint she alleges: violation of the Equal Pay Act, 29 U.S.C. § 206(d); discrimination on the basis of her national origin under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, 2000e-17 ("Title VII"), and the Florida Civil Rights Act, §§ 760.01–.11, Fla. Stat. (2008) ("FCRA"); discrimination based on her sex in violation of Title VII and the FCRA; and retaliation under Title VII and the FCRA.

Defendant moved for summary judgment as to all eight counts. (Doc. No. 14.) In her

Response in opposition, Plaintiff concedes that discovery revealed no basis for contesting that motion with regard to her three claims of national-origin discrimination (Counts II, III, and IV). She further concedes that her claims of gender discrimination under Title VII and the FCRA (Counts IV and V) are insufficient to overcome summary judgment.

This leaves contested only Plaintiff's claim of gender-based wage discrimination under the Equal Pay Act (Count I) and her retaliation claims under Title VII and the FCRA (Counts VII and VIII). For the reasons stated below, Defendant's motion for summary judgment is **DENIED** with respect to the remaining three counts.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

### III. BACKGROUND

Plaintiff began working for GTE as a Systems Analyst in 1997. (Pl.'s depo., p. 385.) In 2000, GTE merged with Bell Atlantic, forming Verizon. (Doc. No. 14, p. 1.) Plaintiff continued to work for Verizon as part of the Enterprise Software Distribution ("ESD") group until she was fired in 2006. (Pl.'s depo., pp. 103, 339.)

#### A. The Equal Pay Act

At the time she was fired, Plaintiff worked in the Major Business Systems ("MBS") part of the ESD group. (Id., p. 104.) Nine employees, including Plaintiff, worked in the MBS division. (Def.'s Exs. 3–4.) Although the MBS employees were located in four different states (Doc. No. 34, p. 4, n.8), three worked with Plaintiff in the Florida office, and all nine employees were hired and managed as one unit by one manager (Pl.'s depo., pp. 103–04.; Stewart depo., p. 8). All of the employees in the MBS division had similar skill sets and capabilities. (Doc. No. 34, pp. 11–12.) In fact, the duties assigned to the employees were often swapped and reassigned within the MBS division, without regard to the employees' titles or paygrades. (Doc. No. 34, p. 11; Pl.'s depo., p. 150; Truesdale depo, pp. 61–62.)

Plaintiff was the only woman in the nine-employee division. (Pl.'s depo., pp. 104, 107–10, Def.'s Exs. 3–4.) She was paid significantly less than each of her male colleagues (Doc. No. 34, p. 4, n.8), even though two months before her termination she was ranked as the sixth-best member of the nine employees (Truesdale depo., pp. 58, 70).

B. <u>Retaliation</u>

Between the years 2000 and 2004, Plaintiff consistently received excellent performance evaluations and was even nominated for a prestigious employment award. (Def.'s Exs. 11–14; Pl.'s depo., pp. 215–16.) However, in 2004, while her mid-year performance review was good, she received a mediocre rating at the end of the year. (Nicolais depo., p. 110; Def.'s Ex. 16.) Unlike the mid-year review, which was conducted by the immediate supervisor of the MBS division, the end-of-year review was conducted with input from the manager of the entire ESD group, Jon Sweiger. (Nicolais depo., p. 110; Def.'s Ex. 16.) Plaintiff believes that Mr. Sweiger harbored animus toward her because of her gender and Palestinian heritage. (Doc. No. 34, p. 3.) In 2005, Plaintiff again earned a positive mid-year performance review from her direct supervisor (Nicolais depo., p. 109), but the end-of-year review, which again incorporated Mr. Sweiger's input, rated her as a mediocre employee (Def.'s Ex. 38).

After her poor performance review in 2005, Plaintiff filed a complaint with the EEOC alleging that her negative treatment was due to her gender and national origin. (Compl., pp. 14–15.) She filed the EEOC complaint on September 29, 2005, and Mr. Sweiger became aware that the EEOC complaint had been filed by November of 2005. (Id., pp. 14–15, 18.)

In February of 2006, Plaintiff was the only person terminated from the ESD group in what her supervisors called a "Reduction in Force" ("RIF"). (Sweiger depo., p. 7.) In November of 2005, her direct supervisor, Mr. Truesdale, ranked Plaintiff ahead of three of her male co-workers in the MBS division when assessing her for purposes of distributing work. (Truesdale depo., pp. 58, 70.) However, when Mr. Sweiger, the manager of the ESD group, called for and participated in a ranking of the ESD employees in January of 2006 for purposes of

the RIF, Plaintiff was ranked as the worst employee even though she performed better than other MBS division members with regard to the objective evaluation criteria. (Sweiger depo., pp. 7, 10–11; Truesdale depo., pp. 112–22.)

### IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Verizon has made the following arguments in support of its Motion for Summary Judgment on Plaintiff's Equal Pay Act claim: (1) The male employees of the MBS division, whose salaries Plaintiff compares with her own, are not appropriate comparators because they had different duties and skills than Plaintiff and did not work at the same physical location as Plaintiff (Doc. No. 14, pp. 9–15.); and (2) The women in Plaintiff's work group at work earned more than either Plaintiff or the men with whom she worked. (Id., pp. 9, 14.)  With regard to Plaintiff's retaliation claims, Verizon argues that Plaintiff fails to establish a causal relationship between the filing of the discrimination claim with the EEOC and any adverse employment action.  (Id., pp. 22–25.)

#### A. The Equal Pay Act

To establish a violation of the Equal Pay Act, Plaintiff must show pay discrimination between herself and at least one comparator of the opposite sex. Equal Employment Opportunity Commission v. White and Son Enterprises, 881 F.2d 1006, 1009 (11th Cir. 1989).  To qualify as a comparator, the employee must (1) perform "substantially equal work" as Plaintiff,  Id., and (2) work in the "same establishment" as Plaintiff, which usually refers to a single physical location, 29 C.F.R. § 1620.9(a).  However, "central control and administration of disparate job sites can

support a finding of a single establishment for purposes of the EPA." Mulhall v. Advance Security, Inc., 19 F.3d 586, 592 (11th Cir. 1994).  If Plaintiff establishes a prima facie case of discrimination in the pay of such a similarly-situated employee, Defendant must show that the wage difference was determined on a factor other than gender. Steger v. General Electric Co., 318 F.3d 1066, 1078 (11th Cir. 2003).

      Although only three of her MBS colleagues worked in Verizon's Florida office with Plaintiff (Doc. No. 34, p. 4, n.8.), all nine MBS employees were hired and managed centrally by one supervisor.[1]  Each of the nine MBS employees was responsible for packaging and preparing software for distribution.  (Doc. No. 34, p. 11.)   Their skills and duties were so similar that they often swapped or redistributed work loads between members within the division without regard to seniority. (Doc. No. 34, p. 11; Kidd depo., pp. 94-95; Pl.'s depo., p. 150; Truesdale depo., pp. 61–62.)   Plaintiff, for example, took on assignments that were originally given to four other individuals in her division, including work assigned to Brian Deihl just before he was promoted to manager of the division.  (Pl.'s depo, pp. 150–51.)   Because all of the MBS employees had substantially similar duties and answered to the same management, certainly Plaintiff's three colleagues in Florida, and possibly all of the other eight MBS employees, could qualify as Plaintiff's comparators.  Plaintiff was paid $6,700 per year less than the lowest-paid of her male colleagues in the MBS division, and her salary was $22,297.50 less than the average salary of the male group members.[2]  (See Doc. No. 34, p. 4, n.8 (listing the salaries of each MBS

---

[1] At the time of Plaintiff's dismissal, Mr. Truesdale supervised the MBS division. (Def.'s Ex. 3.) The supervisor of the MBS division answered to Mr. Sweiger, the manager of the entire ESD group. (Id.)

[2] She earned $11,233 less than the average salary of her male Florida colleagues.

member).)

Defendant suggests that differences in skill level and responsibility justified the wage disparity. (Doc. No. 14, pp. 9–15.) However, as noted above, each of the nine MBS employees had similar packaging and distribution duties, and Plaintiff was able to exchange workloads and assignments with other group members, suggesting they had similar relevant capabilities and performed substantially equal work. Also, two months prior to her RIF ranking and dismissal, she was ranked above three of her male colleagues by her direct superior. (Truesdale depo., pp. 58, 70; Compl., pp. 2–3, 19.)

Defendant further contends that other women in the ESD group earned more than either Plaintiff or her male colleagues. (Doc. No. 14, pp. 9, 14.) While this may be true as to the ESD group, none of those women cited by Defendant were in the MBS division (Def.'s Exs. 2–3; Doc. No. 34, p. 4, n.8), which performed different tasks than the rest of the ESD group and had a different direct supervisor (Stewart depo., pp. 31–32; Doc. No. 34, p. 11). Since the women did not perform substantially similar work as Plaintiff, nor did they answer to the same management, they are not proper comparators, and their salaries do not dispositively discount pay discrimination within the MBS division.

A genuine issue of material fact exists as to whether Defendant allocated wages within the MBS division based on gender. This triable issue precludes summary judgment on Plaintiff's Equal Pay Act claim. Thus, with regard to this claim (Count I), Defendant's Motion for Summary Judgment is DENIED.

B. Retaliation

To establish a prima facie claim of retaliation under either Title VII or the FCRA, the burden is the same. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1389–90 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act. Accordingly, because the plaintiffs cannot maintain a retaliation claim under Title VII, we conclude that the district court correctly dismissed the plaintiff's Florida Civil Rights Act retaliation claim."). To establish a claim of retaliation, Plaintiff must show that she (1) was engaged in statutorily protected activity; and (2) because of performing that activity; (3) she was subjected to an adverse employment action. Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006). A sufficient causal relationship may be inferred if an adverse action is taken in close temporal proximity to the time "the decision-maker became aware of the protected activity." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999). The required temporal proximity is not a clearly-bounded concept, but it likely requires that the adverse employment action take place less than three months after the adverse actor's discovery of the protected activity. See Higdon v. Jackson, 393 F.3d 1211, 1220–21 (11th Cir. 2004) (noting that a one-month gap would suggest a causal relationship, but refusing to recognize a three-month proximity between the protected activity and the adverse employment action as sufficient proof of causation).

If Plaintiff establishes a prima facie case of retaliation, then Defendant must show that the adverse employment action was taken for a reason other than retaliation. Johnson v. Booker T. Washington Broad Serv. Inc., 234 F.3d 501, 507, n.6 (11th Cir. 2000). If Defendant proffers a legitimate reason for the adverse action, then Plaintiff regains the burden and must show that Defendant's reason is pretextual. Id.

On September 29, 2005, Plaintiff filed a charge of gender and national-origin discrimination with the EEOC, which act—for the purposes of summary judgment—Defendant concedes was a protected activity. (Compl., pp. 14–15.) Mr. Sweiger, the supervisor of the ESD group, knew of the EEOC charge in November of 2005. (Doc. No. 34, p. 18.) After Mr. Sweiger learned of the charge, Plaintiff's was given an employee ranking of lowest of the nine employees in the MBS division despite her performance on objective criteria (in the RIF ranking of January 2006), and she was terminated (in February of 2006). The January low ranking was the stated reason for which Plaintiff was terminated and was therefore an adverse employment action. Plaintiff relies in part on temporal proximity between the EEOC charge and her ranking and subsequent termination to establish that there is a causal relation between the protected activity and the adverse employment action. The poor ranking occurred in the first few days of January of 2006, approximately two months after Mr. Sweiger learned of Plaintiff's EEOC charge, the termination approximately three months after Mr. Sweiger's notice of the charge. Under the circumstances alleged here, the two-to-three month proximity suggests that there is a causal relation between the charge and the termination.

Verizon offers no explanation for ranking Plaintiff as the lowest performer in January of 2006. (Truesdale depo., p. 112–22; Pl.'s depo., p. 468; Sweiger depo., pp. 10–11.) In addition, Plaintiff has provided facts to suggest that the negative ranking—which led to Plaintiff's termination as part of a need for a "Reduction in Force"("RIF")—was pretextual. Other employees in the MBS division ranked lower with regard to the objective employee-evaluation criteria at the time Plaintiff was ranked as the lowest performer. (Truesdale depo., p. 112–22.) Also, shortly before the RIF, the MBS division accepted several transfers from within the

9

company. (Tauber depo., p. 60–62, Truesdale depo., pp. 19–20.)  Further, after Plaintiff was notified of her impending dismissal, two men were hired into the MBS division to fill the same position as Plaintiff.  (Pl.'s Exs. 2–3 (Doc. Nos. 39–40).)  Based on these facts, a rational jury could find that the change in her employee rating from sixth-best to worst when ratings were requested for a RIF dismissal was motivated by Plaintiff's complaint to the EEOC.

Because Plaintiff presents a triable issue of fact with regard to her retaliation claims under Title VII and the FCRA, Defendant's Motion for Summary Judgment is DENIED as to Counts VII and VIII.

## V.  CONCLUSION

Accordingly, it is ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED IN PART AND DENIED IN PART**.  Defendant's Motion for Summary Judgment is DENIED with respect to Plaintiff's claim of gender-based wage discrimination under the Equal Pay Act (Count I) and her claims of retaliation under Title VII and the FCRA (Counts VII and VIII).  With respect to all other claims brought by Plaintiff (Counts II, III, IV, V, and VI), Defendant's motion is GRANTED.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of August 2008.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge